# SUPREME JUDICIAL COURT

FOR THE

COUNTY OF BRISTOL, OCTOBER TERM 1863.

━━━

PRESENT :

Hon. GEORGE T. BIGELOW, Chief Justice.
Hon. CHARLES A. DEWEY,
Hon. THERON METCALF,
Hon. PLINY MERRICK,        } Justices.
Hon. REUBEN A. CHAPMAN,

---

TIMOTHY W. HOXIE *vs.* PACIFIC MUTUAL INSURANCE COMPANY.[*]

In a time policy on a vessel which at the commencement of the risk is in a foreign port, where full repairs may be made, there is an implied warranty of seaworthiness, both for port and in setting out therefrom.

CONTRACT on a policy of insurance dated September 14, 1860, by which the defendants insured the plaintiff in the sum of $6000, on the bark Nimrod, at and from the 12th day of September 1860 at noon to the 12th day of September 1861 at noon.

At the trial in this court, before *Metcalf,* J., it appeared that the bark sailed from Perth Amboy on the 27th of May 1860, on

---

[*] This case was argued in October 1862.

a voyage to Aspinwall, laden with coal. A few days after she sailed she met with a severe gale, during which she sprung a leak, and leaked so badly that she was obliged to put back to Bermuda, which she had passed in the course of her voyage, as a port of distress. At Bermuda, by the order of surveyors, her cargo was discharged, and extensive repairs were made, continuing for more than three months. It was agreed that on the 1st of September 1860 she was undergoing repairs which were not completed until the 17th of the same month, and that shortly afterwards she proceeded to Aspinwall, delivered her cargo, went from there in ballast to Kingston, Jamaica, where she discharged her ballast and took in some logwood, after which she went to St. Ann's Bay and took in some sugar, fustic, rum and other articles, and sailed for London about the 25th of July 1861. Shortly after sailing she began to leak, the sugar in her hold melted, she had a heavy list, and ultimately fell over and sunk.

It was in controversy whether injuries sustained on her passage to Bermuda, not sufficiently repaired, occasioned her loss, or whether the loss was attributable to perils occurring after the 12th of September 1860 ; and the judge, in conformity to a request of the plaintiff, instructed the jury that " if the vessel was seaworthy when she left Perth Amboy, and if she was injured by the perils of the seas before putting into Bermuda, and if the master used all care and attention in making repairs, but left port with some injury not repaired, because the same was not after such care and diligence discovered either by him or the surveyors, the underwriters are not discharged by reason of the non-repair of such undiscovered injury, even if the loss was occasioned thereby."

The jury returned a verdict for the plaintiff, for $5741 damages, and the defendants alleged exceptions.

*J. H. Clifford & H. Gray, Jr.*, for the defendants, in addition to authorities cited in the opinion, cited Marsh. Ins. (4th ed.) 109–111, 114, 115, 124–127, 191, 619–628, and cases cited ; 1 Park on Ins. (7th ed.) 332, 333, 342–346, 351, 352; 1 Arnould on Ins. 333–336, 652–655, 668–674, and cases cited ; 1 Bell Com.

(4th ed.) 530, 534; Hughes on Ins. 263, 306; Holt on Shipping, 82; Woolrych on Com. Law, 162; 3 Chit. Com. & Manuf. 482; 2 Saund. (Wms. note) 201 *b*; Maude & Pollock on Shipping, 251, 252; Millar on Ins. 42, 43, 98; Abbott on Shipping, (7th ed.) 342; *Jenkins* v. *Heycock*, 8 Moore P. C. 351; *Michael* v. *Tredwin*, 17 C. B. 551; *Thompson* v. *Gillespy*, 5 El. & Bl. 209; *Michael* v. *Gillespy*, 2 C. B. (N. S.) 627; *Knill* v. *Hooper*, 2 Hurlst. & Norm. 277; *Cunningham* v. *Hall*, Sprague's Decis. 404; S. C. 4 Allen, 273; *Jones* v. *Insurance Co.* 2 Wallace, Jr. 278; *The Casco*, Daveis, 192; *Myers* v. *Girard Ins. Co.* 26 Penn. State R. 193; *Prescott* v. *Union Ins. Co.* 1 Whart. 399; *Commonwealth Ins. Co.* v. *Globe Ins. Co.* 35 Penn. State R. 480; *Coggeshall* v. *Amer. Ins. Co.* 3 Wend. 289; *Draper* v. *Commercial Ins. Co.* 21 N. Y. 378; S. C. 4 Duer R. 239; 2 Duer on Ins. 434, 573, 574, 671; *Putnam* v. *Wood*, 3 Mass. 481; *Porter* v. *Bussey*, 1 Mass. 441; *Commonwealth Ins. Co.* v. *Whitney*, 1 Met. 23; *Cobb* v. *New England Ins. Co.* 6 Gray, 198; Emerigon des Assur. *c.* 12, sect. 38, § 4; *c.* 13, sect. 4, § 1; sect. 5, § 1; 1 Alauzet des Assur. 472; 3 Pardessus Droit Com. Nos. 773–777, 841.

*S. Bartlett*, for the plaintiff. It is not open to controversy that, under any known form of policy, be it for a voyage or for a period of time, this bark, in port, undergoing repairs, was, when this policy was to take effect, seaworthy; and, consequently, that the policy attached. *Paddock* v. *Franklin Ins. Co.* 11 Pick. 227–232. Any question that can be raised as to the liability of the defendants must rest for its support upon one of three grounds, viz : some subsequent breach of warranty; or the omission of some legal duty by the plaintiff or his agent under circumstances which discharged the defendants; or upon the ground that the ultimate loss was the result of perils not covered by the policy.

And first, as to any warranty the breach of which subsequent to the contract's going into effect would defeat it. It is obvious that the only warranty which can be claimed to exist, in this case, is, that the bark, at the time when the policy attached, although not at a home port, nor at the port of the owner's

residence, nor yet at the port from which a voyage was about to be begun, yet was in port, and where the means of putting her in a state of complete seaworthiness existed, and that under these circumstances the law implies an absolute warranty that, on leaving that port in the prosecution of her voyage, she shall be in all respects seaworthy, and this irrespective of any knowledge or means of knowledge by her owner of her true condition.

This whole question as to implied warranty in time policies has, within a few years past, been, in a series of cases, examined in all its aspects and largely discussed, in England and by this court. The cases are cited below, and the results may be briefly stated thus : In *Small* v. *Gibson,* and *Gibson* v. *Small,* 16 Q. B. 128, 141, and 4 H. L. Cas. 353, which went from the queen's bench to the exchequer chamber, and thence to the house of lords, it was settled, to use the words of Lord Campbell, in a more recent case, (*Fawcus* v. *Sarsfield,* 6 El. & Bl. 200,) that " upon a time policy, where no special circumstances are shown rebutting the possibility that on the day the risk was to commence the ship might be on the high seas in the middle of a voyage, there is no implied warranty that she should be seaworthy on that day." This was in 1853. In the same year this court, in *Capen* v. *Washington Ins. Co.* 12 Cush. 517,[*] settled, in conformity to a suggestion made by it as far back as 1831, (11 Pick. 227–231,) that " in a time policy on a vessel then at sea, there is no absolute implied warranty that the ship is and shall continue seaworthy during the entire risk; although there may be an obligation on the part of the insured to keep the vessel tight, stanch, and strong — a failure of which, when practicable, would prevent a recovery for a loss arising from such cause." In 1856 a case arose in the queen's bench, where, at the inception of a time policy, the ship insured was an outward-bound ship, lying in the port of Sunderland, where the plaintiff resided, and

---

[*] It was incidentally stated during the hearing of the present case that the argument for the defendants in *Capen* v. *Washington Ins. Co.* 12 Cush. 528, is erroneously attributed to Judge Curtis, and that it was in fact made by Mr. Bartlett. .

was afterwards sent to sea " in an unseaworthy state, and when she was not in a fit and proper condition safely to go to sea." Lord Campbell, and all the judges except Erle, J., who adhered to his original views in *Small* v. *Gibson,* concurred in the judgment that no warranty of seaworthiness was to be implied. *Thompson* v. *Hopper,* 6 El. & Bl. 172. This doctrine was again affirmed in *Fawcus* v. *Sarsfield, ubi supra,* where it did not appear that the policy attached in the port where the plaintiff resided; and the precise point now under discussion was considered by Lord Campbell. See also *Jenkins* v. *Heycock,* 8 Moore P. C. 351; *Jones* v. *Insurance Co.* 2 Wallace, Jr. 278.

The principles on which the authorities proceed are understood to be that, in time policies, the assured cannot be deemed to contract, in relation to a ship absent on a voyage, that she is on any particular day in a proper state of equipment and repair; since it is not reasonable to suppose that he enters into a warranty or submits to a condition which may avoid the policy, with respect to a state of facts of which he can know nothing. It is much more according to the principles of insurance law and of common sense that the risk of the ship's not being seaworthy, when the liability of the underwriter ought to begin, should be cast on him who can easily indemnify himself by an adequate premium for undertaking it. *Gibson* v. *Small,* 4 H. L. Cas. 420, 421. The underwriters may make inquiries, and introduce an express warranty; and they may always insist on a premium adequate to the risk which they run. *Thompson* v. *Hopper,* 6 El. & Bl. 189. Nor is it a sufficient answer to say, with Mr. Justice Erle, that this is " a wager on the safety of an unknown ship." Such wager takes place in every policy made during a voyage, insuring the ship, lost or not lost; and the premium is calculated and paid for the whole voyage, and may in like manner in time policies be based upon the value of the risk since the ship sailed, or was last known to be in safety.

It is said that it was the plaintiff's duty to repair the vessel at Bermuda, and that if he did not do it thoroughly he must take the consequences. The answer is, that no man is under an obligation to perform a duty where he has no notice, or to

make repairs where he knows of no defect. The repairs which were made covered all known or ascertainable defects; and to require more would be to require a warranty.

If, then, there be no implied warranty that the bark was sea-worthy when she sailed from Bermuda, it remains to inquire whether the doctrine peculiar to this country, (1 Arnould on Ins. 666,) by which, in voyage policies, where injuries sustained during the voyage are not repaired by the assured when possible, the underwriters are discharged if the loss happens from this cause, is to be applied to the case where the injuries occurred before the policy attached. We admit its applicability; and think the court will be satisfied that the reasons on which it is founded, and the qualifications of the rule, furnish the true ground on which this case should be disposed of. It has already been shown by the authorities that in time policies, the position and condition of the ship being unknown to both parties, the underwriter is presumed to fix his premium so as to cover that risk; and this can only be done by basing it upon information of the period when the ship was last known to be in safety. Having thus calculated and taken the risk, the contract becomes in effect a voyage policy; and all the consequences which here attach to voyage policies become applicable. But the qualification of the doctrine (which is decisive for the plaintiff) was in this case made the basis of the instructions by the court, and the verdict was founded on it, to wit: that the injuries to be repaired must be such as are capable of being discovered by the highest care and diligence, otherwise the underwriter is not discharged. *Starbuck* v. *New England Ins. Co.* 19 Pick. 198.

BIGELOW, C. J. The facts material to the decision of this case may be briefly stated. The vessel which was the subject of insurance in the policy declared on, having sailed from Perth Amboy, in the state of New Jersey, in May 1860, bound on a voyage to Aspinwall, was compelled by reason of sea damage to put back into the port of Bermuda, which she had previously passed in the prosecution of her voyage, for the purpose of making necessary repairs. There were in that port ample means and opportunities of putting the vessel in a state of

complete repair, and of fitting her in all respects for sea. On the first day of September 1860 she was still undergoing repairs, which were not finished until the seventeenth day of that month, soon after which she proceeded to sea in the further prosecution of the adventure on which she sailed from Perth Amboy. The policy declared on was effected on the fourteenth day of September; the risk to begin on the twelfth day of September. As nothing is shown to the contrary, it must be assumed that, at the date of the policy and on the day when the risk began, the vessel was in such condition, undergoing repairs, that she was then seaworthy for port, so that the policy attached.

In this state of facts the question to be determined is, whether in a policy on time upon a vessel so situated there is an implied warranty of seaworthiness, similar to that which the law implies in case of a voyage policy — that is, that the vessel is not only seaworthy for port, but also in a suitable condition for sea, by a breach of which the insurers are discharged from liability for loss, happening from any cause. This is an interesting and important question of commercial law, which has never yet been adjudicated in this commonwealth. In *Capen* v. *Washington Ins. Co.* 12 Cush. 517, in which it was held for the first time by any court in this country that in a time policy effected on a vessel at sea there is no implied warranty of seaworthiness at the inception of the risk, it was stated by the late chief justice that the case then under adjudication was distinguishable from one where a time policy is effected on a vessel " in port at the time the policy is made to take effect at the inception of the risk, and first sails after the policy has attached — whether it be from a home port, a neighboring or a foreign port — a place where full repairs can be obtained or not." p. 534. This language, it is obvious, was intended to exclude from that decision a case like the one at bar. In the case of *Small* v. *Gibson*, 16 Q. B. 128, 141, in the exchequer chamber, in which it was held, overruling the decision of the queen's bench, that there is no implied warranty of seaworthiness in a time policy on a ship, wherever the ship may be or in whatever circumstances placed at the commencement of the term insured — a decision in exact accordance with

that in *Capen* v. *Washington Ins. Co.* — the question raised in the present case was alluded to but not decided; the intimation of the court being, that there might be an implied warranty in a time policy according to the situation in which the ship may be at the commencement of the term of insurance, that is, that the ship is or shall be seaworthy for that voyage, if she is then about to sail on a voyage. The same case was carried by a writ of error to the house of lords, where the decision of the court of exchequer was affirmed, establishing as the law of England that in a time policy effected on a vessel then at sea there is no implied warranty of seaworthiness on the day when the policy is intended to take effect. *Gibson* v. *Small*, 4 H. L. Cas. 353. In answering the questions propounded by the house of lords, the several judges took occasion to express opinions, more or less direct, on the question which we are now called on to determine; the majority of them, while holding that there is no implied warranty at the inception of the risk in the case of a vessel then at sea, inclining to the opinion that such warranty might exist in the case of a time policy, effected on a vessel when in port, where the owner or master had opportunity and means to make repairs and render her fit for sea. Even Baron Parke, who seems inclined to the opinion that there is no implied warranty of any kind or under any circumstances in the case of a time policy, admits that he has doubts whether there would not be a warranty that the ship was seaworthy "at the commencement of a voyage of which the time insured by the time policy was a part," and that his opinion might be qualified or altered by a more solemn argument, if the case were to turn on the decision of this question. And Lord St. Leonards, whose opinion, as is said by Lord Campbell, in every department of jurisprudence is entitled to the highest respect, expresses the opinion that if a ship was about to sail on a particular voyage, and a time policy was effected, a condition would be implied that the ship was seaworthy at the commencement of the voyage. In the more recent cases of *Thompson* v. *Hopper*, 6 El. & Bl. 172, and *Fawcus* v. *Sarsfield*, Ib. 192, the precise question at issue in the present case came before the court

of queen's bench, and it was there held by a majority of that court that there is no implied warranty in the case of a time policy effected on a ship lying in a home port where the owner resides, and then bound on a foreign voyage for which she was chartered.  From this decision, however, there was a dissent by Mr. Justice Erle, now the chief justice of the common pleas. And it is curious to notice that the majority of the court concurring in the opinion delivered by Lord Campbell, is made up of two justices, who, in the case of *Small* v. *Gibson*, 16 Q. B. 128, had decided that there was an implied warranty in all cases of time policies that the ship was seaworthy at the commencement of the risk.  Such, as we understand it, is the present condition of the decisions of the English courts on the point in controversy in the present action ; and it certainly seems to justify the remark of Mr. Serjeant Shee, in his recent edition of Marsh. Ins. 127, that the law on the principal point is not yet in a settled state.   In this somewhat distressing conflict of opinion among those best qualified to know what the law is or ought to be, on a matter of so much interest and importance to the commercial community, and in the absence of any authority which is conclusive upon us, we must endeavor to seek out such analogies as will enable us, if possible, to determine the question in conformity to sound principle, and at the same time to preserve unbroken the harmony and symmetry of our commercial code.

It cannot be denied that until the recent discussions arising in the cases of *Capen* v. *Washington Ins. Co.* and *Small* v. *Gibson*, it had always been assumed as a settled doctrine of the law of insurance that, in policies on ships and vessels, whether for a voyage or for time, there was an implied warranty of seaworthiness.   If we turn to foreign jurists and commentators on the commercial codes of continental Europe, whence we derive most of the rules and principles which lie at the foundation of our law of marine insurance, we shall, it is believed, find no trace that any distinction was recognized in the application of the doctrine of seaworthiness to policies for a voyage or on time. That policies on time were not unknown contracts in the

commercial communities of Europe prior to the year 1781, when Emerigon wrote his treatise, is manifest from his statement in *c.* 13, § 3, that he had seen insurances made for one year in which "the entire year forms the voyage insured." It appears also that vessels bound on voyages described as *caravane, grand cabotage, petit cabotage* and *longue course* were usually covered by insurances for a time limited. But there is no intimation that policies of this nature were excepted from the rule which bound the insured, in case of loss, to show that his ship or vessel was fit for sea at the commencement of the voyage insured. So in the adjudicated cases in this country and in England, and in all the approved text writers of both countries, it seems to have been assumed without doubt or question that in policies for a specified time, as well as those for specified voyages, there was a warranty by the assured of the seaworthiness of his ship or vessel. *Hucks* v. *Thornton*, Holt N. P. C. 30. *Hollingworth* v. *Brodrick*, 7 Ad. & El. 40. *Sadler* v. *Dixon*, 8 M. & W. 895. 3 Kent Com. (6th ed.) 287, 307. 1 Phil. Ins. §§ 695, 727. In the case of *Martin* v. *Fishing Ins. Co.* 20 Pick. 389, which was the case of a policy on a vessel for a term of six months, both counsel and court assumed that in a policy on time there was an implied warranty that she was seaworthy when the policy attached and the risk commenced. These authorities, and others which might be adduced, verify the statement of Mr. Justice Erle in *Thompson* v. *Hopper, ubi supra,* that "it does not appear that any person ever expressed the opinion that there was no warranty in any time policy, until Baron Parke spoke in the house of lords."

But although the doctrine of warranty of seaworthiness as applied to time policies was not doubted or called in question until the recent discussions already alluded to, it was nevertheless suggested long since that some modification of it, as it was usually understood in respect to voyage policies, might become necessary in certain cases where insurance was effected on a ship or vessel while at sea, for a limited time. Such seems to have been the intimation of the late chief justice of this court, in *Paddock* v. *Franklin Ins. Co.* 11 Pick. 231,

accompanied however with a distinct intimation that the warranty of seaworthiness, although it might be applied with great liberality in such cases, would not be wholly dispensed with. And in 1 Arnould on Ins. 411, 672, a doubt is thrown out whether the warranty has not a different meaning, as applied to policies on time, from that which attaches to it in connection with voyage policies, the author coming to the conclusion that the warranty implied is similar in both contracts.

From this brief summary of the authorities, there would seem to be no foundation in them for the position that there is no warranty of seaworthiness in any policies on time — a warranty which is said to lie at the basis of the contract of marine insurance. It is easy to see a good reason for holding that a policy on time, effected on a vessel when at sea, does not include any warranty of her seaworthiness at the commencement of the risk. In such case, the insurance is on a " vessel in an unknown sea in an unknown state." The insured has no means of knowing her actual condition, or, if she is injured and out of repair, of restoring her to a condition of seaworthiness. Both parties enter into the contract with a full knowledge of these facts. It would not only be pushing a rule of law to an unreasonable extent to say that under such circumstances the assured undertakes to warrant his ship, of the condition and circumstances of which he can know nothing, to be then seaworthy for any purpose, but it would be contrary to the manifest intent and understanding of the parties. In such cases, the circumstances attending the making of the contract of insurance tend directly to rebut any implication of a warranty of seaworthiness at the inception of the risk. But when it is attempted to go further, and to say that, because in certain cases of insurance on time it cannot be reasonably held that there is an implied warranty of seaworthiness at the inception of the risk, there is no such implied warranty at all in any such policy, whatever may be the circumstances under which the contract was entered into, the reasoning is fallacious and unsound. Such a conclusion would be at variance with the authorities and principles on which the doctrine of seaworthiness as the basis of the contract of insurance is

founded, and would wrest a particular class of policies from all the analogies which regulate and govern other contracts of insurance precisely alike in all respects except in the single particular that the limitation of the risk is regulated by a fixed period of time, instead of by the duration of a voyage, or, as it is sometimes expressed, by the motion of the earth instead of by the motion of the ship. Certainly it would be contrary to all the received canons of legal exposition to construe policies of this nature as if they were isolated contracts, having no connection with or affinity to other similar contracts under the law merchant, and to which only the general rules regulating the interpretation of ordinary written contracts are to be applied. These policies ought not to be taken out by the mere force of judicial construction from the class of contracts to which they belong, or from the rules and principles by which such contracts are interpreted, any further than is rendered absolutely necessary by the peculiar stipulation which distinguishes them from other contracts of marine insurance. Indeed, it is with reference to these rules and principles, long established and well known by all persons engaged in commercial transactions and the business of insurance, that policies on time must be presumed to be made; and to disregard and reject them in giving an interpretation to the provisions which they contain, would be clearly contrary to the plain intent and understanding of the parties.

Every implied warranty, therefore, which according to the usage of insurance and the decisions of courts of law is presumed from the fact of making an insurance on a ship or vessel under the well known forms adopted for policies, is to be annexed to and form part of a policy on time, as well as of one for a specified voyage, unless inconsistent with the nature of the risk or the circumstances under which the policy was entered into. Take for instance the duty which the law imposes on the assured of making a full disclosure of all facts within his knowledge affecting the risk; or the obligation of legal conduct in the use and management and navigation of a ship; or the duty of preserving and manifesting the national character of neutral property on board the vessel. No one can doubt that all these

and other like stipulations, which are usually implied in case of policies for specified voyages, would be equally and as strongly implied in time policies. Why then should the implied warranty of seaworthiness be wholly rejected as inapplicable to this large class of marine insurances? Most of the reasons on which the doctrine of such warranty is founded, and which led to its adoption and incorporation into our system of commercial law, apply with as much force to policies on time as to those for a voyage. So far as the rule rests on sound policy, having in view the benefit of commerce and the preservation of human life by guarding against the danger of carelessness and neglect on the part of the assured concerning the condition of the ship and the consequent safety of passengers and crew, all policies on time certainly ought not to be exempted from its operation. So far as it is deemed to be of the essence of the contract that the subject of it shall be fit and suitable for the purpose for which the parties understand and intend that it is to be used, so that the insurer may have a fair chance of earning his premium, which he would not have if there was an original and inherent vice in the thing for the loss of which he agrees to indemnify the owner, the warranty that the ship is seaworthy would seem to form as essential a part of the contract of insurance in a time policy as in a policy for a voyage. Equally necessary, too, is such warranty in both classes of policies, in order to prevent fraudulent insurances effected with a design to obtain compensation for losses not happening from perils of the sea. Nor can we see anything in the nature of the warranty itself which renders it incapable of being applied to most policies on time, substantially with the same effect as to voyage policies. Such warranty in case of a voyage policy is not necessarily implied at the date of the policy or the commencement of the risk, nor does it always extend to or cover a period of time anterior to those dates, if the vessel is at sea when the policy is effected. In a policy, for instance, for a voyage, effected after a ship has sailed, and to commence on a designated day after her departure, the warranty of seaworthiness is satisfied if she was seaworthy when she departed from port, bound on her voyage.

Nor does the warranty in a voyage policy depend on the question whether the owner knows of the defect or want of seaworthiness, or can discover it by the use of due diligence, nor yet on the port where the vessel may happen to be. It is implied, although the insured may have been ignorant of the condition of the ship when the insurance was effected, and although she may at the time be in a distant and foreign port. The warranty is not that the vessel is seaworthy for the voyage on which the vessel is bound, but for that portion of it which is covered by the policy. It is the voyage insured, the *viaggium*, not the *iter navis*, to which the implied warranty extends. These may be and often are the same; but they may be wholly distinct. A vessel may be bound on a succession of voyages. If the policy insures the vessel for all the voyages, the warranty is that she shall be seaworthy for all, and the aggregation of the voyages constitutes in such case the voyage insured. But a policy may be effected to cover only one of the whole number of such voyages, in which case the warranty would be that she was seaworthy for that voyage only, and it would not extend so as to include the passage of the vessel from any previous port, nor embrace any subsequent portion of her route. No one of these leading characteristics of the doctrine of warranty of seaworthiness, as usually applied in cases of voyage policies, can be said to be inapplicable to a policy on time. If a vessel is in port when a policy on time is made and takes effect, the warranty would be of seaworthiness at that time and place; if she is at sea, it would relate back to the time when she was last in port, and could have been made seaworthy before the commencement of the *terminus a quo* of time when the risk commenced. The knowledge or ignorance of the owner or his agent of the condition of the ship in port, or the fact that she was, when last in port, abroad and distant from the place of her owner's residence, can have no greater force as an argument against such warranty in a policy on time than in one on a voyage. As the warranty may be for part of a voyage, or for one only of a succession of voyages on which a vessel is bound, so by parity of reasoning it may be for a term of time, though not identical with and

either longer or shorter than that which may be requisite to complete the actual voyage on which the vessel is bound, or in the prosecution of which she may be engaged at the commencement of the risk.

It is however urged, and this is the strongest argument against the analogy between time and voyage policies in respect to the warranty of seaworthiness, that in the application of it to the latter, as the nature, extent and necessities of a specific and designated voyage are known and can be anticipated, a vessel can be prepared and fitted for the service for which she is destined, so as to be seaworthy in the broadest sense of that term, as understood in the modern practice and law of insurance ; but that in case of a time policy, in which no limits or *termini* are given except the days named which fix the time, and no specific service or voyage is designated, and the insured is left at liberty to employ his vessel during the time covered by the policy according as his interest or necessities may dictate or require, it would be impracticable to make her seaworthy for the voyage insured, that is, for the time during which the risk is to continue, and that it would be unreasonable to imply a warranty of seaworthiness under such circumstances. It seems to us that this objection is rather theoretical than practical. There is no doubt that the warranty, if one is implied, is for the voyage insured — using this phrase as *nomen juris,* to designate the term covered by the policy, whether its *termini* are fixed by points of place or time — and that seaworthiness imports, in the law of insurance, a relation between the condition of the ship and the perils she may have to encounter in the situation in which she may be placed ; so that before departure on a voyage, whether limited by designated ports or places, or only by a fixed period of time, she must be fit in a degree which a prudent owner if uninsured would require, to meet the perils of the service she is engaged in, and to continue so during the voyage, unless exposed to extraordinary damage. Now the alleged want of analogy between time and voyage policies, as respects the practicability of making a vessel seaworthy in this sense for a specific voyage, and for one the duration of which is marked by time, is often greatly

overstated. In the first place, it is not correct to say that all the necessities and perils of a voyage described by ports or places can in every case be foreseen and provided for. In the case of voyages to unfrequented places, or ports but recently opened to commercial intercourse, such, for instance, as a voyage a few years since to the northern ports of China, or more recently to the waters and ports of the kingdom of Japan, it would be diffi- cult to foresee and provide for all the circumstances which might affect the seaworthiness of a vessel during such an adventure. In the next place, in a great number if not in a majority of cases of insurances on time, the prospective voyages of the ship or vessel are frequently well known and understood, and a policy on time is resorted to as a matter of convenience, to save the enumeration of the several ports or places which it may be necessary to visit in the course of a voyage, or to avoid the risk of some slight deviations, which would invalidate a voyage policy. Within this class of cases are included a very large number of insurances on vessels for fixed periods of time. Such, for example, are policies on time effected on ships bound from a port in the United States to India or China and back, voyages which usually occupy a year or eighteen months in their per- formance; also similar policies on vessels bound on voyages of like duration from Boston or New York to San Francisco, the Chincha Islands and a port either in Great Britain or this coun- try, and likewise insurances for time on ships destined to be en- gaged in the whale fishery in distant seas. But in all these and similar cases there would be no greater difficulty in rendering a ship seaworthy for a term of time named in the policy, which is usually equivalent or nearly so to the time which would be necessary for the completion of the voyage on which she was bound, than for the voyage itself. And even when the precise course or kind of business in which a ship or vessel may be en- gaged is not known at the time when insurance is effected, there would be little or no difficulty in making her seaworthy for any service in which she was likely to be employed during the time for which she was insured, or in ascertaining whether she was so in case of disaster. The strongest case of the kind which

would be likely to arise would be that of a freighting or seeking ship, engaged in no regular course of trade, whose employment depended on the vicissitudes or exigencies of commerce. But these are so well known or so readily anticipated, or the general course of a vessel seeking employment is so often foreseen, that it would but seldom happen that a prudent owner would be unable to make his vessel seaworthy for any risk to which she might be exposed during the term for which he would procure insurance, even if it formed part of an antecedent risk not covered by the policy. In the practical business of insurance the exception would be a rare one in which it would be impracticable to make a vessel seaworthy for a voyage insured, although designated only by limitations of time. Such exceptional cases form no valid reason for exempting all time policies from a condition of so much importance and value to the insured, which has always hitherto been held to form the basis of the contract of insurance. *Ad ea quæ frequentius accidunt jura adaptantur.*

Nor ought it to be overlooked, in the consideration of this question, that the introduction into the law of insurance of a rule which would exempt all policies on time from the implied warranty of seaworthiness would lead to incongruities and to a want of harmony in the application of well established principles to the different classes of contracts of marine insurance, which ought, if possible, to be avoided. This may be illustrated by a case already supposed of a ship bound on a voyage to India or China. Suppose that she is insured by the same or two different owners, by two separate policies, one half of her value by a policy on time, the other half by a policy for the voyage, the former covering substantially the same period of time as that requisite to complete the voyage, so that the risk in both policies is essentially the same. If a ship thus insured should be lost in the prosecution of the voyage, after having been put in repair so far as due diligence by the owner or master should render it necessary, and it should turn out that she was unseaworthy at the commencement of the voyage, it would certainly seem to be contrary to all the received rules of interpretation to construe the two contracts, which are substantially alike in all

respects, so as to arrive at results precisely opposite; that is, so as to cast the loss on the insurers in the case of the time policy, and on the insured in the case of the voyage policy. This is similar to the case put by Mr. Justice Erle in *Gibson* v. *Small,* 4 H. L. Cas. 385, to which he appends the significant and appropriate remark that " this seeming absurdity would be the law, if voyage policies are subject to the conditions in question and time policies are not." Take another case which often occurs, of insurance on a vessel like that reported in *Martin* v. *Fishing Ins. Co., ubi supra,* by a policy at and from a specific port on a certain day to, at and from all ports and places to which she may proceed in the coasting trade for six months or a year. The nature and character of the service in which the vessel is to be employed in such a case are well understood, and no difficulty can be experienced in making her seaworthy for the term insured by the policy. No good reason for not implying a warranty of seaworthiness in such policy can be given, which would not apply with equal strength to a policy designating the various ports which the vessel would visit in the prosecution of her business during a period equivalent to that covered by a policy on time. Yet if there is no warranty in any time policy, it would be implied in the latter case, while it would be denied in the former — a distinction which seems to be purely artificial and unsound. The same may be said with equal truth of every policy on time, effected on a vessel bound on a specific voyage in which the term covered by the policy is equivalent to the time necessary to complete the voyage. Every reason exists for the implication of a warranty of seaworthiness in such a policy, which exists in regard to a policy underwritten for the voyage on which the vessel is about to depart.

It was suggested by the counsel for the plaintiff that if any warranty of seaworthiness was implied in the policy declared on, it was fully complied with by proof of the fact that the vessel was seaworthy at Perth Amboy on her departure thence in the prosecution of the adventure during the continuance of which the policy was effected and the vessel was lost. But we are unable to appreciate the soundness of this suggestion. It

confounds the voyage insured with the actual voyage on which the vessel happens to be bound at the date of the policy. As has been already said, these two have no necessary connection. Looking to the analogy of a policy for a voyage, the doctrine suggested certainly finds no support or sanction. In a policy effected on a vessel in port, whether domestic or foreign, whether at the beginning of an adventure or after a part of it is completed, there is no warranty that the vessel was seaworthy at the commencement or during any antecedent portion of the voyage in the prosecution of which she is then engaged. The warranty in such case applies only to the inception of the risk, and to the prospective part of the adventure which is covered by the policy and thus forms the voyage insured, as distinguished from the voyage or voyages in the prosecution of which the vessel happens to be engaged. It is only when the vessel is at sea at the inception of the risk that the warranty of seaworthiness, in the case of a voyage policy, relates back to the time when the voyage insured commenced. But such a case affords no analogy for determining the point of time at which such warranty is to be implied, when a policy is effected on a vessel in port, where full repairs can be made at the inception of the risk, and the commencement of the term of time covered by the policy.

The main ground on which the court of queen's bench seems to have gone in deciding that there is no warranty of seaworthiness whatever, under any circumstances, in any time policy, is the inconvenience which might be occasioned in applying the doctrine to certain cases of insurances on time which might arise. But this inconvenience, which we do not deny might sometimes exist, is far less in our judgment than would be created by the anomaly of an absolute denial of one of the great principles of marine insurance, in its application to an entire class of contracts which are almost precisely analogous to those in which it is uniformly and rigorously applied.

These considerations have led our minds to the conclusion that, on the facts disclosed at the trial, (and we do not mean to decide anything beyond the precise case before us,) there was

an implied warranty of seaworthiness in the policy declared on, in analogy to that which would exist under similar circumstances in a policy for a voyage; and that the insurance having been effected on a vessel while in port, to take effect from a certain day, which was before she sailed thence, the warranty includes seaworthiness for port as well as seaworthiness in setting out therefrom, as in a policy at and from a particular place.

The case of *Rouse* v. *Insurance Co.* 25 Law Reporter, 523, to which our attention has been called by the counsel for the defendants since the foregoing opinion was written, substantially sustains the views above expressed.

As the instructions given to the jury negatived the existence of any such warranty, the order must be

*New trial granted.*